**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EDWARD DAVIS,

Plaintiff, Case No.

v. Hon.

CITY OF YPSILANTI,

Defendant.

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
Hurwitz Law PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 847-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Edward Davis ("Plaintiff"), by and through his attorneys, Hurwitz Law PLLC, hereby states the following:

## INTRODUCTION

1. Plaintiff brings this action against Defendant City of Ypsilanti ("Defendant"), arising from failure to engage in the interactive process in good faith and retaliation in direct violation of the Persons with Disabilities Civil Rights Act

and the Americans with Disabilities Civil Rights Act ("ADA").

2. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue on August 19, 2026.

3. Plaintiff exercised his rights to worker's compensation benefits and he was terminated less than two months later, in violation of Michigan Worker's Disability Compensation Act ("WDCA"), Mich. Comp. Laws 418.301(13).

## JURISDICTION AND PARTIES

4. Plaintiff is an individual residing in Ypsilanti Township, Michigan.

5. Defendant is a municipal corporation and public entity organized and existing under the laws of the State of Michigan, with its principal offices located in Ypsilanti, Washtenaw County, Michigan.

6. The U.S. District Court for the Eastern District of Michigan has federal question jurisdiction over claims under the Americans with Disabilities Act of 1990 ("ADA"), pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over claims pursuant to 28 U.S.C. § 1367(a), under the Persons with Disabilities Civil Rights Act ("PWDCRA"), and the Michigan Worker's Disability Compensation Act ("WDCA").

7. Venue is proper under 28 U.S.C. § 1391(b), as it is the district in which a substantial part of the events giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff began his employment on April 28, 2025.

9. Plaintiff had performed his duties with care and professionalism.

10. Defendant's Chief of Police Timothy Anderson had informed him that his training would be shortened because he was being promoted into the Detective Bureau.

11. Plaintiff began training in late August.

12. Plaintiff and his partner responded to a complaint of loiterers at a transit center on September 20, 2025, after which he was injured and transported by ambulance to Trinity Health Ann Arbor Hospital in Ypsilanti, Michigan.

13. Plaintiff thereafter began to experience symptoms of anxiety, difficulty concentrating, fatigue, panic attacks, and restlessness after the incident.

14. Plaintiff's symptoms were greatly exacerbated by his nighttime work schedule, which began at approximately 6:00 p.m.

15. Plaintiff had informed Chief of Police Anderson of his mental health condition and the difficulties he was experiencing on October 16, 2025.

16. Plaintiff attended detective school from October 20-25, 2025, which he understood was part of his early promotion into the Detective Bureau.

17. Plaintiff thereafter met with Dr. Richard Janka, a psychologist, on October 28, 2025, who recommended that he participate in therapy.

18. Plaintiff met with Nurse Practitioner Jeenan Nassar, who diagnosed him with generalized anxiety disorder ("GAD") on October 29, 2025.

19. Plaintiff also met with Licensed Master Social Worker ("LMSW") Maria Williams, who diagnosed him with acute stress disorder ("ASD").

**Plaintiff's Request for Accommodation–November 3, 2025**

20. Plaintiff first initiated the interactive process by emailing Defendant's Human Resources Director Rachel Frye on November 3, 2025.

21. Plaintiff wrote, in relevant part, "I'm reaching out because my doctor and therapist are recommending some time off for medical reasons . . . I wanted to ask what type of leave I'm eligible for and what paperwork I need to complete."

22. Plaintiff thereafter provided a doctor's note to Mr. Anderson and Lieutenant Peter Wist in an email the following day, on November 4, 2025.

23. The doctor's note, authored by Ms. Williams, disclosed her diagnosis of acute stress disorder ("ASD") and recommended a workplace accommodation consisting of a daytime work schedule, "preferably beginning at 8:00 a.m."

24. Ms. Williams wrote that the requested schedule modification was medically appropriate because "this adjustment would allow for consistent sleep-wake patterns, structured therapy attendance, and improved regulation of the nervous system."

25. Mr. Anderson did not contact Ms. Williams.

26. Ms. Frye did not contact Ms. Williams.

27. Mr. Anderson denied the request during a phone call that he initiated that same day, on November 4, 2025.

28. Ms. Frye emailed him later that week, on November 6, 2025, suggesting he could request personal leave but warning that "personal leave is not guaranteed."

29. Plaintiff was entitled to only four (4) personal days every year.

30. Plaintiff was admitted to Trinity Health Livonia Hospital in Livonia, Michigan on November 10, 2025.

**Plaintiff's Involuntary Medical Leave–November 13, 2025**

31. Plaintiff was informed by Lieutenant Wist that he was being placed on involuntary medical leave, effective November 13, 2025.

32. Plaintiff met with a psychiatrist, Dr. Xavier White, that same day, who prescribed a medication that caused him to experience suicidal ideations.

33. Plaintiff was admitted to Corewell Health Wayne Hospital in Wayne, Michigan on November 15, 2025.

34. Plaintiff met with Nurse Practitioner Antoinette Pouokam-Longmo on December 4, 2025.

35. Plaintiff was admitted to the University of Michigan Hospital in Ann Arbor, Michigan on December 9, 2025.

36. Plaintiff repeatedly sought treatment for mental illness during the final

ten weeks of his employment, including on October 29, 2025, October 31, 2025, November 3-4, 2025, November 10-11, 2025, November 13-15, 2025, November 18, 2025, December 3-5, 2025, December 9-10, 2025, December 13, 2025, December 18, 2025, and January 8, 2026.

37. Plaintiff met with Ms. Williams on November 18, 2025, December 13, 2025, December 18, 2025, and January 8, 2026.

**Plaintiff's Workers' Compensation Benefits–November 20, 2025**

38. Plaintiff filed a workers' compensation benefits claim arising from the injury that he sustained on November 20, 2025.

39. Plaintiff completed an injury report on that date, therein identifying the addresses and phone numbers of Dr. Janka, Ms. Nassar, and Ms. Williams.

40. Plaintiff thereafter authorized the release of his medical records in connection with his claim on November 28, 2025, including "all records pertaining to mental illness."

41. Plaintiff also provided a doctor's note to Senior Claims Representative Julie Moore with Meadowbrook Claims Service.

42. The doctor's note is dated December 29, 2025, and signed by Family Nurse Practitioner ("FNP") Eman Abusalah.

**Plaintiff's Termination**

43. Plaintiff was thereafter informed of his termination during a meeting

with Mr. Anderson and Ms. Frye, less than two months after filing a workers' compensation benefits claim.

44. Plaintiff was told only that he was not "fit for duty."

45. Plaintiff never received a termination letter, despite his email requests for same on January 16, 2026 and January 20, 2026.

**COUNT I**
**MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**
**DISCRIMINATION AND FAILURE-TO-ACCOMMODATE**
**MICH. COMP. LAWS § 37.1202**

46. Plaintiff incorporates by reference the foregoing paragraphs.

47. Defendant is an "employer" within the meaning of Mich. Comp. Laws § 37.1201(b).

48. Plaintiff was an "employee" within the meaning of Mich. Comp. Laws § 37.1201(a).

49. Plaintiff is a "person with a disability" within the meaning of Mich. Comp. Laws § 37.1103(h) or was "regarded as" such within the meaning of Mich. Comp. Laws § 37.1103(d).

50. Defendant knew or had reason to know of his disability.

51. Plaintiff's team of medical providers includes Ms. Abusalah, Dr. Janka, Ms. Nassar, Ms. Pouokam-Longmo, Dr. White, and Ms. Williams.

52. Plaintiff's disability limits his "major life activities" within the meaning of Mich. Comp. Laws 37.1103(d), including, among other things, caring for himself,

eating, and sleeping.

53. Plaintiff was diagnosed with generalized anxiety disorder ("GAD") and acute stress disorder ("ASD").

54. Plaintiff was qualified for his position.

55. Plaintiff requested a reasonable accommodation.

56. Plaintiff initiated the interactive process by emailing Ms. Frye on November 3, 2025.

57. Plaintiff thereafter provided a doctor's note to Mr. Anderson and Lieutenant Wist in an email the following day, on November 4, 2025.

58. The doctor's note, authored by Ms. Williams, disclosed her diagnosis of acute stress disorder ("ASD") and recommended a workplace accommodation consisting of a daytime work schedule, "preferably beginning at 8:00 a.m."

59. Mr. Anderson did not contact Ms. Williams.

60. Ms. Frye did not contact Ms. Williams.

61. Defendant failed to engage in the interactive process.

62. Defendant cannot satisfy its burden of proving undue hardship.

63. Plaintiff was informed by Lieutenant Wist that he was being placed on involuntary medical leave, effective November 13, 2025.

64. Plaintiff was terminated in January.

65. Plaintiff thereby suffered adverse employment actions.

66. Plaintiff was discriminated against on the basis of his disability.

67. Defendant's actions were knowing and willful.

68. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

69. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT II**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**DISCRIMINATION AND FAILURE-TO-ACCOMMODATE**
**42 U.S.C. § 12112**

70. Plaintiff incorporates by reference herein the foregoing paragraphs.

71. Plaintiff was an "employee" during all relevant times within the meaning of 42 U.S.C. § 12111(4).

72. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5).

73. Plaintiff has a "disability" that substantially limits her "major life activities" or was "regarded as having such an impairment" within the meaning of

42 U.S.C. § 12102(1).

74. Defendant knew or had reason to know of his disability.

75. Plaintiff's team of medical providers includes Ms. Abusalah, Dr. Janka, Ms. Nassar, Ms. Pouokam-Longmo, Dr. White, and Ms. Williams.

76. Plaintiff's disability limits his "major life activities" within the meaning of 42 U.S.C. § 12102(1), including, among other things, caring for himself, eating, and sleeping.

77. Plaintiff was diagnosed with generalized anxiety disorder ("GAD") and acute stress disorder ("ASD").

78. Plaintiff was qualified for his position.

79. Plaintiff requested a reasonable accommodation.

80. Plaintiff initiated the interactive process by emailing Ms. Frye on November 3, 2025.

81. Plaintiff thereafter provided a doctor's note to Mr. Anderson and Lieutenant Wist in an email the following day, on November 4, 2025.

82. The doctor's note, authored by Ms. Williams, disclosed her diagnosis of acute stress disorder ("ASD") and recommended a workplace accommodation consisting of a daytime work schedule, "preferably beginning at 8:00 a.m."

83. Mr. Anderson did not contact Ms. Williams.

84. Ms. Frye did not contact Ms. Williams.

85. Defendant failed to engage in the interactive process.

86. Defendant cannot satisfy its burden of proving undue hardship.

87. Plaintiff was discriminated against on the basis of his disability.

88. Defendant's actions were knowing and willful.

89. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue on August 19, 2026.

90. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

91. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT III**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**RETALIATION**
**42 U.S.C. § 12203**

92. Plaintiff incorporates by reference herein the foregoing paragraphs.

93. Plaintiff was an "employee" within the meaning of 42 U.S.C. §

12111(4).

94. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5).

95. Plaintiff requested a reasonable accommodation.

96. Plaintiff initiated the interactive process by emailing Ms. Frye on November 3, 2025.

97. Plaintiff thereafter provided a doctor's note to Mr. Anderson and Lieutenant Wist in an email the following day, on November 4, 2025.

98. The doctor's note, authored by Ms. Williams, disclosed her diagnosis of acute stress disorder ("ASD") and recommended a workplace accommodation consisting of a daytime work schedule, "preferably beginning at 8:00 a.m."

99. Plaintiff thereby engaged in protected activity.

100. Defendant had actual knowledge of that activity.

101. Plaintiff was informed by Lieutenant Wist that he was being placed on involuntary medical leave, effective November 13, 2025.

102. Plaintiff was terminated in January.

103. Plaintiff thereby suffered adverse employment actions.

104. There was a causal connection between the request for accommodation and the adverse employment actions.

105. "Where an adverse employment action occurs very close in time after

an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

106. The close temporal proximity between the two events more than supports a reasonable inference of retaliatory motive.

107. Defendant's stated termination reason is a pretext.

108. Plaintiff had been meeting or exceeding all expectations.

109. Chief of Police Anderson had informed him that his training would be shortened because he was being promoted into the Detective Bureau.

110. Plaintiff attended detective school from October 20-25, 2025, which he understood was part of his early promotion into the Detective Bureau.

111. Plaintiff would not have been terminated but instead would have been promoted, but-for his protected activity.

112. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue on August 19, 2026.

113. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in

the future.

114. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT VI**
**WORKER'S DISABILITY AND COMPENSATION ACT**
**RETALIATORY DISCHARGE**
**MICH. COMP. LAWS § 418.301(13)**

115. Plaintiff incorporates by reference herein the foregoing paragraphs.

116. Defendant is an "employer" within the meaning of Mich. Comp. Laws § 418.151.

117. Plaintiff was an "employee" within the meaning of Mich. Comp. Laws § 418.161.

118. An employer "shall not discharge an employee" because he asserted his right to workers' compensation benefits. Mich. Comp. Laws 418.301(13).

119. Plaintiff was injured in the scope of his employment on September 20, 2025.

120. Plaintiff exercised his rights and engaged in protected activity by filing a workers' compensation benefits claim on November 20, 2025.

121. Plaintiff's employment was terminated less than two months later.

122. Plaintiff thereby suffered an adverse employment action.

123. There was a causal connection between the assertion of the right to workers' compensation benefits and the adverse employment action.

124. The close temporal proximity between the two events more than supports a reasonable inference of retaliatory motive.

125. Defendant's stated termination reason is a pretext.

126. Plaintiff had been meeting or exceeding all expectations.

127. Chief of Police Anderson had informed him that his training would be shortened because he was being promoted into the Detective Bureau.

128. Plaintiff attended detective school from October 20-25, 2025, which he understood was part of his early promotion into the Detective Bureau.

129. Plaintiff would not have been terminated but instead would have been promoted, but-for his protected activity.

130. Defendant's actions were knowing and willful.

131. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

132. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and

ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff claims as follows:

A. Compensatory damages for monetary and non-monetary loss,
B. Exemplary and punitive damages;
C. Pre-judgment interest;
D. Attorneys' fees and costs; and
E. Such other relief as in law or equity may pertain.

Respectfully Submitted,

Hurwitz Law PLLC

*/s/ Kara F. Krause*

Kara F. Krause (P85487)
Noah S. Hurwitz (P74063)
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
noah@hurwitzlaw.com
kara@hurwitzlaw.com

Date: October 21, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EDWARD DAVIS,

Plaintiff, Case No.

v. Hon.

CITY OF YPSILANTI,

Defendant.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
Hurwitz Law PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 847-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

---

**JURY DEMAND**

Plaintiff, by and through his attorneys, Hurwitz Law PLLC, hereby demands a trial by jury of the issues in the above-captioned cause of action.

Respectfully Submitted,

Hurwitz Law PLLC

*/s/ Kara F. Krause*
Kara F. Krause (P85487)
Noah S. Hurwitz (P74063)
*Attorneys for Plaintiff*

Date: October 21, 2026